

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed January 3, 2006

United States Bankruptcy Judge

_____

FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| MARTHA EDITH GONZALEZ | § § | |
| Debtor. | § § § | CASE NO. 04-49435-DML-13 |

### MEMORANDUM OPINION

Before the court is the confirmation of Martha Gonzalez's ("Debtor") chapter 13 plan and the Motion to Compel Debtors [sic] to Make Payments and to Assume or Reject Executory Contract (the "Motion") filed by Dan James and Sally Kallam (collectively, "Creditors"). The court has jurisdiction to adjudicate this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(a).

### I. Background

The material facts are not disputed. In January of 1992, Debtor entered into an agreement (the "Contract") with Creditors, whereby Creditors agreed to sell a house (the "Property") to Debtor for a purchase price of $27,400. Under the terms of the Contract, Creditors were to finance the transaction at a ten percent annual interest rate for 15 years (180 months). The Contract called for Debtor to make 180 monthly installment payments due on the first of each month beginning January 1, 1992, to Creditors in the amount of $363.41. Creditors agreed to convey legal title to Debtor by warranty deed when she

"paid the entire deferred principal amount, earned interest, and any other debt owed" under the Contract. Sometime in 2003, Debtor fell behind in her payments. In June 2004, Creditors informed Debtor that because she was four months behind in her payments and had failed to adequately insure the Property, they were terminating the Contract[1] and expected her to vacate the premises. Debtor made no payments in June, July, August, or September of that year and filed for bankruptcy relief on October 1, 2004.

Creditors filed an amended objection to the confirmation of Debtor's chapter 13 plan on July 29, 2005, followed by the Motion on August 1, 2005. Debtor filed an objection to the Motion and an accompanying brief on August 16, 2005, asserting that the Contract was not an executory contract for purposes of section 365 of the Bankruptcy Code (the "Code").[2] A hearing on the Motion and confirmation of Debtor's chapter 13 plan was held on August 18, 2005. At the court's direction, the parties mediated their dispute before the Hon. Russell F. Nelms. Mediation did not resolve the matter, however, and another hearing was held on October 20, 2005. At this time, the court took the matter under advisement and invited the parties to submit letter briefs on the issue. Creditors submitted a letter brief to the court on December 8, 2005.

---

[1] It is uncertain whether the Contract is in fact canceled. The parties agree that Sally Kallam informed Debtor in a letter that she was canceling the Contract. However, the filing of the Motion—since it presupposes that Debtor can assume or reject the Contract—is inconsistent with the Contract's having been canceled. Thus, even if cancellation did occur, the filing of the Motion may have waived Creditors' right to treat the Contract as canceled. However, since the issue is not necessary to the resolution of the matter before it, the court need not decide whether the contract in fact was canceled or whether a waiver has occurred.

[2] 11 U.S.C. §§ 101, *et seq.*

## II. Issue

The issue presented is straightforward: is the Contract an "executory contract" for purposes of section 365 of the Code.

## III. Discussion

"Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979). Thus, Texas law should be applied to determine the nature of the Contract. Under Texas law, there is a type of real estate conveyance labeled a "contract for deed" in which the vendee of the property pays the purchase price directly to the vendor in installments over an extended period of time (usually 15 to 20 years). *See* 16-72 TEXAS TRANSACTION GUIDE—LEGAL FORMS § 72.22 (Matthew Bender & Co. 2005). The vendee generally takes immediate possession of the property after executing the contract. *Id*. However, the buyer does not receive legal title to the property until the entire purchase price is paid in full. *Id*. It is this delayed passage of title that distinguishes a contract for deed from a mortgage in Texas—under the latter the buyer receives title *ab initio*. *See, e.g.*, *Arturo Flores v. Millenium Interests, Ltd.*, No. 04-1003, 2005 Tex. LEXIS 733, at *3 (Tex. S. Ct. Sept. 30, 2005).

Under the terms of the Contract, Debtor does not receive legal title to the Property until she has "paid the entire deferred principal amount, earned interest, and any other debt owed." Thus, under Texas law the Contract is properly categorized as a contract for deed, not a mortgage.[3]

---

[3] The Contract is titled "Contract for Deed," and the parties do not dispute this categorization of the Contract under Texas law.

As a matter of Texas law, contracts for deed are considered executory contracts, not security devices.[4] *See In re Waldron*, 65 B.R. 169, 173 (Bankr. N.D. Tex. 1986). Underlying this treatment of contracts for deed in Texas is the characterization of the vendee's interest in the property during the repayment period. In Texas, it is widely held that until the purchase price is paid in full the vendee under a contract for deed has only an "equitable right" to complete the contract, not equitable title to the property. *See Johnson v. Wood*, 157 S.W.2d 146 (Tex. Comm'n App. 1941, opinion adopted). The reasoning in *Johnson* has reflected the law in Texas for over 60 years and has been followed by numerous courts. *See Clinton Park Dev. v. Commissioner*, 209 F.2d 951 (5th Cir. 1954); *Gaona v. Gonzales*, 997 S.W.2d 784 (Tex. App.—Austin 1999, no pet.); *Club Corp. of Am. v. Concerned Prop. Owners*, 881 S.W.2d 620 (Tex. App.—Beaumont 1994, writ denied); *Texas Am. Bank/Levelland v. Resendez*, 706 S.W.2d 343 (Tex. App.—Houston 1986, no writ); *Guzman v. Acuna*, 653 S.W.2d 315 (Tex. App—San Antonio 1983, writ dism'd w.o.j.); *Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942 (Tex. App.—Houston 1981, no writ); *Jensen v. Bryson*, 614 S.W.2d 930 (Tex. Civ. App.—Amarillo 1981, no writ); *Bradford v. Cole,* 570 S.W.2d 171 (Tex. Civ. App.—Texarkana 1978, writ dism'd w.o.j.); *Atkins v. Carson*, 467 S.W.2d 495, 500 (Tex. Civ. App.—San Antonio 1971, writ ref'd).

Debtor, however, urges the court to disregard the *Johnson* decision as well as the voluminous body of caselaw endorsing it and to follow instead *Leeson v. City of Houston*, 243 S.W. 485 (Tex. Comm'n App. 1922, judgm't adopted). In *Leeson*, it was held that the vendee under a contract for deed "is invested with the equitable title from the date of

---

[4] The Texas legislature has made its view on this point clear by referring to contracts for deed as "executory contracts for conveyance" in the regulating statutes. *See* TEX. PROP. CODE §§ 5.062-5.085 (2005).

the contract, or in any event, from the date he takes possession." *Leeson*, 243 S.W. at 485. Thus, under *Leeson* a contract for deed is tantamount to a mortgage—the vendee holds title to the property from the inception of the agreement, while the vendor holds merely a lien.

The court, however, finds *Johnson*, not *Leeson*, to be controlling. Both *Johnson* and *Leeson* were decided by the Texas Commission of Appeals, an adjudicative body formed to lighten the workload of the Texas appellate courts. The precedential value of an opinion of the Commission is determined by its subsequent treatment by the Texas Supreme Court. *See* TEXAS LAW REVIEW ASS'N, TEXAS RULES OF FORM, chap. 5 at pp. 15-18 (9th ed. 1998). If the Texas Supreme Court adopts the Commission's *opinion*, it has the full authority of a Texas Supreme Court decision. *Id*. However, if only the *judgment* is adopted, this "indicates that the court approved neither specific holdings nor reasonings of the Commission." *Id*. While the Texas Supreme Court adopted the opinion in *Johnson*, it adopted merely the judgment in *Leeson*. Moreover, *Johnson* was decided after *Leeson*, so it is arguable that in adopting the *Johnson* opinion the Texas Supreme Court intended to overrule *Leeson* to the extent it had any precedential value. Also, *Johnson* is consistent with early Texas caselaw concerning the rights of parties to a contract for deed. Indeed, not long after statehood the Texas Supreme Court distinguished between the equitable right that a vendee receives *ab initio* under a contract for deed and the equitable title he receives when the purchase price is paid in full. *See Browning v. Estes*, 3 Tex. 462 (1848); *Hemming v. Zimmerschitte*, 4 Tex. 159 (1849). At least one other bankruptcy court has specifically rejected *Leeson* in favor of *Johnson*. *See In re Finley*, 138 B.R. 181, 183 (Bankr. E.D. Tex. 1992).

Contracts for deed executed in Texas are therefore executory contracts for purposes of section 365 of the Code. The vast majority of courts that have adjudicated the issue have so held. *See In re Waldron*, 65 B.R. 169 (Bankr. N.D. Tex. 1986); *Rancho Chamberino, Inc. v. B.F.W. Enterprises, Inc. (In re Rancho Chamberino, Inc.)*, 89 B.R. 597 (W.D. Tex. 1987); *In re Finley*, 138 B.R. 181 (Bankr. E.D. Tex. 1992); *In re Keisler*, 166 B.R. 620 (Bankr. N.D. Tex. 1994); *Turoff v. Sheets (In re Sheets)*, 277 B.R. 298 (Bankr. N.D. Tex. 2002); *In re Hendrickson*, No. 04-81261, 2005 Bankr. LEXIS 908, at *7 (Bankr. N.D. Tex. May 24, 2005); *but see In re Flores*, 32 B.R. 455 (Bankr. S.D. Tex. 1983) (citing equitable grounds in holding a contract for deed executed in Texas was not an executory contract).

Professor Vern Countryman, whose definition of what constitutes an executory contract in the bankruptcy context has been almost universally adopted by courts and was arguably tacitly ratified by Congress when it enacted the Code,[5] has expressly stated that agreements such as contracts for deed are executory contracts under his definition: "Certainly a contract under which the vendee still owes a material part of the purchase price and the vendor has not transferred title, and is not obligated to do so until that price is fully paid, is an executory contract…" Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 469-70 (1973).

---

[5] Countryman defines an executory contract as one "on which performance is due to some extent on both sides." *See* Vern Countryman, *Executory Contract in Bankruptcy: Part I*, 57 Minn.L.Rev. 439 (1973). The Supreme Court has noted that the Code's legislative history indicates that this is what Congress intended the term to mean. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6 *citing* H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 347 (1977); S.Rep. No. 95-989, 95th Cong. 2d Sess. 58 (1978). For a discussion of the near universal adoption of Countryman's definition by courts as well as its arguable tacit ratification by Congress in the enactment of the Code, *see Gloria Manufacturing Corp. v. Int'l Ladies Garment Workers' Union*, 724 F.2d 1020, 1021-22 (4th Cir. 1984).

The Contract is thus an executory contract for purposes of section 365 of the Code and, as such, is subject to the provisions contained therein setting forth the prerequisites for assumption and the consequences of rejection. Accordingly, in order for Debtor to remain in possession of the Property, she must first assume the Contract, which requires meeting the prescriptions of section 365(b)(1).[6] Because it calls for Debtor keep the Property without assuming the Contract or meeting the requirements of section 365(b)(1), Debtor's current chapter 13 plan is not confirmable.

For the foregoing reasons, confirmation of Debtor's chapter 13 plan is hereby DENIED without prejudice.

The Motion is GRANTED. Debtor shall file a pleading (which may be a modified chapter 13 plan) effecting assumption or rejection of the Contract within sixty (60) days of the entry of this memorandum opinion.

---

[6] There is perhaps another remedy available to Debtor's estate. One could argue that if the Contract was in fact canceled in June 2004, this cancellation constituted a transfer for less than reasonably equivalent value and is thus a fraudulent transfer under section 548 of the Code to the extent that Debtor was insolvent at the time of the cancellation. As of the time of the filing of Debtor's bankruptcy petition, the Code broadly defined "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary *or involuntary*, of disposing of or parting with an asset *or an interest in an asset*." 11 U.S.C. § 101(54) (emphasis added). Creditors' cancellation of the Contract could be viewed as an involuntary disposition of Debtor's interest in the Property. As shown above, the vendee under a contract for deed in Texas holds an equitable right to complete the contract—and thus obtain title to the underlying property—from the time the contract is executed. Such a right certainly has some value, especially in a case such as Debtor's in which the worth of the Property has appreciated significantly since the time of the execution of the Contract. Debtor's losing this right without (so far as the court knows) receiving anything in return could be a transfer for less than reasonably equivalent value. Therefore, to the extent that the trustee could show that Debtor was insolvent on the date of the transfer, the trustee could conceivably set aside the cancellation of the Contract as a fraudulent transfer under section 548 of the Code. While in this case any recovery from the fraudulent transfer action would accrue to the sole benefit of Debtor because the Property serves as Debtor's homestead and is therefore exempt, ordinarily in a fraudulent transfer suit the trustee is seeking to recover an improperly acquired asset from in order to redistribute its value for the benefit of all creditors.